UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CAROLINE SCARPINATO,

                    Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
          -against-                     13-CV-0955(JS)(SIL)

1770 INN, LLC d/b/a/ THE 1770 HOUSE,
BERNARD KRUPINSKI, and BONNIE
KRUPINSKI,

                    Defendants.
----------------------------------X

APPEARANCES
For Plaintiff:      Saul D. Zabell, Esq.
                    Zabell & Associates, P.C.
                    1 Corporate Drive, Ste. 103
                    Bohemia, NY 11716

For Defendants:     Robert P. Lynn Jr., Esq.
                    Stephen W. Livingston, Esq.
                    Lynn, Gartner, Dunne & Covello, LLP
                    330 Old Country Road, Ste. 103
                    Mineola, NY 11702

SEYBERT, District Judge:

          Plaintiff Caroline Scarpinato ("Scarpinato") commenced this action against defendants 1770 Inn, LLC d/b/a The 1770 House (the "LLC"), Bernard Krupinski, ("Krupinski") and Bonnie B. Krupinski (collectively, "Defendants"), alleging breach of contract, unjust enrichment, and partnership oppression. Currently before the Court is Defendants' motion for summary judgment. (Docket Entry 30.) For the following reasons, Defendants' motion is GRANTED in its entirety, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

BACKGROUND[1]

Sometime around 1993, Plaintiff began working for Krupinski at East Hampton Point, a restaurant that Krupinski partially owned on the South Fork of Eastern Long Island. (Scarpinato Dep., Docket Entry 30-47, at 10:12-19; 12:18-22.[2]) While initially hired as a server, Plaintiff eventually took on roles of Special Events Director and General Manager (Scarpinato Dep. at 10:12-25, 17:9-24.) Her responsibilities as general manager included hiring and training of new employees and general oversight of the East Hampton Point restaurant. (Scarpinato Dep. at 22:7-17.) Plaintiff and Krupinski grew very close, and Krupinski sometimes expressed that she was like a second daughter to him. (Scarpinato Dep. at 47:2-3.)

In the winter of 2002, while East Hampton Point was closed for the season, Krupinski and Plaintiff visited the 1770 House, an inn and restaurant in East Hampton, New York.

---

[1] The following factual recitation is drawn from the parties' statements of undisputed facts pursuant to Local Rule 56.1, as well as the Court's independent review of the record.

[2] Though it does not color the Court's opinion today, the Court is compelled to observe that the conduct of Plaintiff's Attorney, Saul D. Zabell, during depositions in this case fell far outside the rules governing attorney conduct during depositions in this District. The undersigned encourages Mr. Zabell to review those rules and Magistrate Judge Scanlon's order in Chawla v. Metro. Oral Surgery Assocs., P.C., No. 11-CV-6248, 2014 WL 4678023 (E.D.N.Y. Sept. 19, 2014), which sanctioned Mr. Zabell for similar misconduct during a deposition.

(Scarpinato Dep. at 40:10-13.)  Krupinski told Plaintiff that he
was considering buying the property, and Plaintiff encouraged him
to do so.  (Scarpinato Dep. at 40:16-41:24.)  Although Plaintiff
recalls that Krupinski purchased the property in early 2002 with
a number of partners, she does not recall the details of the
transaction.  (Scarpinato Dep. at 43:5-44:2.)

        After the purchase of the 1770 house, Krupinski began
renovating    and    redesigning    the    restaurant    and    kitchen.
(Scarpinato Dep. at 82:24-84:12.)  At some point during the
renovations, Krupinski allegedly told Plaintiff and another
manager, B.J. Calloway, that they would be ten-percent partners
"at 1770."  (Scarpinato Dep. at 51:4-22; 53:13-20.)  Plaintiff
alleges that Krupinski further told her that she would not be
required to buy into her partnership, (Scarpinato Dep. at 66:3-
5), and would not be responsible for any losses arising out of the
operation of the 1770 House, (Scarpinato Dep. at 111:17-22).  The
agreement was never memorialized in writing.  (Defs.' 56.1 Stmt.,
Docket Entry 30-5 ¶ 3.)  Relying on Krupinski's representation,
Plaintiff consistently offered her input on the renovations and
redesign of the restaurant.  (Scarpinato Dep. at 82:24-84:9.)
Initially, Plaintiff was compensated solely by East Hampton Point,
but she later earned a salary from both East Hampton Point and
1770 House.  (Scarpinato Dep. at 84:15-85:20.)

Krupinski contends that when he offered Plaintiff a ten-percent stake "at 1770," he intended to provide Plaintiff with ten percent of the profits from operation of the restaurant on the premises. (Krupinski Dep., Docket Entry 30-49, at 32:9-14.) He explains that he offered Plaintiff and another manager, B.J. Calloway, a ten-percent stake in the restaurant in exchange for their help getting the restaurant up and running. (Krupinski Dep. at 32:9-14.)

In April 2002, Plaintiff completed and filed on behalf of the 1770 House an application for a New York State Liquor License. (Zabel Decl. Ex. A, Docket Entry 31-2.) On the application, which was signed by Krupinski, Plaintiff listed herself as a "Member/Manager." (Zabel Decl. Ex. A.) Consequently, when the New York State Liquor Authority issued the license, Plaintiff was listed as an owner. (Zabel Decl. Ex. B, Docket Entry 31-3.) Krupinski never corrected the license, but instead renewed it as it stood. (Zabel Decl. Ex. C, Docket Entry 314.)

Later, on August 28, 2002, defendants Bernard Krupinski and Bonnie B. Krupinski, together with non-parties Michael Rencanati, Joseph Perella, and Amy Perella (collectively, the "Documented Members") entered into an operating agreement for the 1770 Inn, LLC d/b/a The 1770 House. (Defs.' 56.1 Stmt., Docket

Entry 30-5, ¶¶ 5-6.)[3]  These Documented Members agreed that the LLC would own and operate the 1770 House restaurant and inn. (Defs.' 56.1 Stmt. ¶¶ 4-6.)  Plaintiff was not told that the LLC was being formed, nor did she have any discussions with Krupinski about the LLC.  (Scarpinato Dep. at 49:16-50:2.)  Plaintiff never received any tax information regarding any interest in this partnership, and she was never invited to any partnership meetings. (Krupinski Dep. at 30:20-31:5.)

From 2002 through 2012, the LLC accumulated net losses nearing three million dollars.  (Lynn Aff., Docket Entry 30-1,

---

[3] Rather than respond appropriately to many of the factual statements in Defendants' Rule 56.1 Statement, Plaintiff's 56.1 statement instead "denies possessing knowledge or information sufficient to form a belief as to the truth or the veracity" of Defendants' statements. (Pl.'s 56.1 Counterstatement, Docket Entry 30-6.)  While the Court appreciates that such a response may be appropriate before discovery is concluded, such a response is flatly inappropriate at this stage of the case. Indeed, in the context of a local 56.1 statement, "an answer that 'Plaintiff can neither admit nor deny this statement based upon the factual record' is not a sufficient response to establish a disputed fact."  Universal Calvary Church v. City of N.Y., No. 96-CV-4606, 2000 WL 1745048, at *2 (S.D.N.Y. Nov. 28, 2000).  Local Rule 56.1 is clear: "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted." LOCAL CIV. R. 56.1(c).  Accordingly, any of the Defendants' Rule 56.1 statements that are not specifically controverted are deemed admitted.  See Aztar Corp. v. N.Y. Entm't, LLC, 15 F. Supp. 2d 252, 254 n.1 (E.D.N.Y. 1998) ("Defendants' 56.1 Statement is replete with responses of 'lack knowledge or information sufficient to either admit or deny.' Defendants have not created any issues of fact through this artifice."), aff'd, 210 F.3d 354 (2d Cir. 2000).

Exs. G, I, K, M, O, Q, S, U, W, Y, AA.) There was only one profitable one year, and by that time, Plaintiff was "out of the picture." (Krupinski Dep. at 53:24-54:2.)

In 2011, the Documented Members commenced litigation against one another concerning the dissolution and management of the LLC. See Krupinski v. Perella, No. 11-CV-21132 (N.Y. Sup. Ct.) (Pines, J.). As the result of a settlement in that and other litigation among the Documented Members, Krupinski purchased the entirety of the LLC for $3.83 million. (Defs.' 56.1 Stmt. ¶¶ 30-31.)

Upon learning that Krupinski had purchased the LLC for $3.83 million, Plaintiff commenced this action. She alleges that in light of Krupinki's 2002 promise, she is entitled to at least ten percent of the proceeds of that sale. Plaintiff claims that Krupinski's promise that she would be his partner "at 1770" created an oral contract entitling her to "everything" at 1770, "profits, assets, equity, everything." (Scarpinato Dep. at 110:25-111:16.) She brings two causes of action premised on that theory: (1) breach of contract and (2) unjust enrichment.[4]

Krupinski, for his part, explains that he never intended to give Plaintiff any ownership in the LLC or the property. The

---

[4] Plaintiff originally brought a claim for partnership oppression under New York Partnership Law. (See Compl. ¶¶ 29-31.) Plaintiff has since withdrawn that claim. (Pl.'s Br., Docket Entry 31, at 2 n.1.)

transaction was simpler; in exchange for Plaintiff's help getting the restaurant portion of the business running, he agreed to give Plaintiff ten percent of the profits generated from the restaurant. (Krupinski Dep. at 96:20-22.)

DISCUSSION

The Court will first discuss the applicable legal standard before turning to Plaintiff's claims for breach of contract and unjust enrichment, respectively.

I.   Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202, 211 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986).  "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90

S. Ct. 1598, 1608, 26 L. Ed. 2d 142, 162 (1970).  A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2512, 91 L. Ed. 2d at 213-14.  To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256, 106 S. Ct. at 2514, 91 L. Ed. 2d at 217).  "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

II.  Breach of Contract

Under New York law,[5] there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).  In determining whether an oral agreement is binding, the Court may consider:

---

[5] The parties agree that New York law governs this dispute.

8

> (1) whether there has been an express
> reservation of the right not to be bound in
> the absence of a writing; (2) whether there
> has been partial performance of the contract;
> (3) whether all of the terms of the alleged
> contract have been agreed upon; and (4)
> whether the agreement at issue is the type of
> contract that is usually committed to writing.

Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985).

Despite any elemental inquiry, however, the sine qua non of an enforceable contract is an agreement: a mutual manifestation of assent to terms sufficiently definite to assure that the parties truly intended to be bound by them. See, e.g., Express Indus. & Terminal Corp. v. N.Y.S. Dep't of Transp., 93 N.Y.2d 584, 589, 715 N.E.2d 1050, 1053, 693 N.Y.S.2d 857 (1999). Absent this "meeting of the minds," an enforceable contract does not lie. See Metro. Enters. N.Y. v. Khan Enter. Const., Inc., 124 A.D.3d 609, 609, 1 N.Y.S.3d 328, 329 (2d Dep't 2015) ("To create a binding contract, there must be a meeting of the minds as to the material terms of the agreement."); Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007). Put differently, "if the Court finds substantial ambiguity regarding whether both parties have mutually assented to all material terms, then the Court can neither find, nor enforce, a contract." Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc., No. 06-CV-2652, 2008 WL 5169495, at *3 (S.D.N.Y. Dec. 9, 2008) (citing Schurr v. Austin Galleries of Ill., Inc., 719 F.2d 571, 576 (2d Cir. 1983)). Though the Court

must avoid being "pedantic or meticulous" in requiring definite terms of an agreement, see Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 483, 548 N.E.2d 203, 206, 548 N.Y.S.2d 920, 923 (1989); Heyman Cohen & Sons v. M. Lurie Woolen Co., 232 N.Y. 112, 114, 133 N.E. 370 (1921) (Cardozo, J.) ("Indefiniteness must reach the point where construction becomes futile."), an arrangement lacking any detail or specificity does not beget liability in contract. See 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp., 78 N.Y.2d 88, 91, 575 N.E.2d 104, 105, 571 N.Y.S.2d 686 (1991) ("The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to.") Whether the essential terms of a contract are too indefinite is generally an issue of law, properly determined on a motion for summary judgment. Cent. Fed. Sav., F.S.B. v. Nat'l Westminster Bank, U.S.A., 176 A.D.2d 131, 132, 574 N.Y.S.2d 18, 19 (1st Dep't 1991).

The requirement of definite terms is perhaps particularly acute in the cases involving oral contracts, where "[a] primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they never intended." Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989) (alternation in original) (quoting Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co., 670 F. Supp.

491, 497 (S.D.N.Y. 1987)); see also Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985) (applying a "definite and firm conviction" standard to the existence of an oral contract) (citation omitted).

Here, the alleged agreement providing that Plaintiff was entitled to ten percent "at 1770" is too indefinite to infer any agreement as to Plaintiff's compensation, and the alleged contract does not exist. While both Plaintiff and Krupinski acknowledge that at some point during their conversations the phrases "ten percent" and "partner" were used, they also both acknowledge that their discussion progressed into no greater detail. (See Scarpinato Dep. at 110:20-111:7 ("Q: Is it your testimony that you were entitled to equity or assets? A: I don't know. . . . Mr. Krupinski told me that I would get ten percent . . . . There was no further elaboration on his part.").) Thus, there is no dispute that "ten percent of what?" and "partner in what?" were questions left unanswered. It hardly requires explaining why an agreement between parties to exchange "ten percent" without an agreement on the whole from which the ten percent would be drawn is no agreement at all. See Lumet v. SMH (U.S.), Inc., No. 91-CV-3369, 1992 WL 380004, at *9 (S.D.N.Y. Dec. 4, 1992) (conversations stating that plaintiff would be given either half a percent or one percent of "cash flow improvement" too indefinite); Freedman v. Pearlman, 271 A.D.2d 301, 303, 706 N.Y.S.2d 405, 408 (1st Dep't 2000) (promise

to equitably divide "the draw" was too indefinite); c.f. Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 240 (S.D.N.Y. 2013) (agreement regarding a three-percent equity interest "in the LLC" was sufficiently definite).

Because the alleged oral agreement at issue lacked any specificity regarding Scarpinato's compensation, an essential term, the Court cannot find a meeting of the minds as to that term, and no contract therefore lies. See, e.g., Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd., No. 06-CV-5474, 2008 WL 857492, at *15 (S.D.N.Y. Mar. 31, 2008) ("New York courts also will not give contractual effect to vague generalizations about compensation."); Gutkowski v. Steinbrenner, 680 F. Supp. 2d 602, 611 (S.D.N.Y. 2010) (collecting cases). Plaintiff's breach of contract claim is therefore DISMISSED WITH PREJUDICE.[6]

III. Unjust Enrichment

Alternatively, Plaintiff brings a claim for unjust enrichment. As discussed below, that claim also fails.

---

[6] Both Plaintiff and Defendants spend considerable effort arguing whether evidence submitted raises an issue of fact regarding the existence of a valid partnership between Plaintiff and Defendants. This is immaterial, however, because Plaintiff's causes of action do not require the existence of a valid partnership, only a valid contract. The Court therefore does not hold Plaintiff to the higher burden of demonstrating the existence of a partnership.

"The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Paramount Film Distrib. Corp. v. New York, 30 N.Y.2d 415, 421, 285 N.E.2d 695, 698, 334 N.Y.S.2d 388 (1972). A plaintiff must show "that (1) the [defendant] was enriched, (2) at [the plaintiff's] expense, and (3) that it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered." Citibank, N.A. v. Walker, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48 (2d Dep't 2004) (internal quotation marks and citation omitted), abrogated on other grounds by Butler v. Cantinella, 58 A.D.3d 145, 868 N.Y.S.2d 101 (2d Dep't 2008). "[T]he law is clear that a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary." Levion v. Societe Generale, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011) (citation omitted), aff'd, 503 F. App'x 62 (2d Cir. 2012). In such circumstances, the plaintiff must demonstrate that the work performed exceeded the scope of the role for which she was compensated. Id.

Defendants compensated Plaintiff, and Plaintiff has offered no evidence to suggest that she performed work outside of the role for which she was compensated. That she was paid less by Defendants than she was by Krupinski's other restaurant, East

Hampton Point, is of no consequence; her roles were different in each restaurant. (Scarpinato Dep. at 84:10-85:6.) Thus, because she was compensated for her services, she cannot be said to have unjustly enriched Defendants. See Levion, 822 F. Supp. 2d at 405; Karmilowicz v. Hartford Fin. Servs. Grp., No. 11-CV-0539, 2011 WL 2936013, at *12 (S.D.N.Y. July 14, 2011) (holding that because plaintiff was compensated, he could not allege that any enrichment was unjust), aff'd, 494 F. App'x 153 (2d Cir. 2012).

But compensation aside, neither equity nor good conscience require that Plaintiff be reimbursed for any services rendered to Defendants. As discussed above, Krupinski's discussions with Plaintiff were far too vague to justify any reliance upon them. Thus, even if the Court were inclined to credit Plaintiff's testimony that she performed work above and beyond her monetary compensation because she believed that she was a ten percent partner in the LLC--an entity that she did not even know existed--equity does not require Krupinski to compensate her for that misbelief.

Plaintiff's unjust enrichment claim also fails for the independent reason that Plaintiff offers no evidence on which to base an award of damages. "The measure of damages for an unjust enrichment claim 'is restricted to the reasonable value of the benefit conferred upon the defendants,' and is 'measured by a defendant's unjust gain, rather than by a plaintiffs loss.'"

_Schatzki v. Weiser Capital Mgmt., LLC_, 995 F. Supp. 2d 251, 253 (S.D.N.Y. 2014) (quoting _Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC_, 813 F. Supp. 2d 489, 534 (S.D.N.Y. 2011)). Plaintiff does not even attempt to calculate any benefit unjustly conferred upon Defendants, much less offer any evidence on which a reasonable jury may base an award thereof. Indeed, the LLC did not make a profit until Plaintiff was "out of the picture," so it is difficult to see how Plaintiff enriched Defendants at all, much less unjustly so.

Accordingly, Plaintiff's unjust enrichment claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket Entry 30) is GRANTED in its entirety, and Plaintiff's claims are DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment in accordance with this Memorandum and Order and to mark this matter CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     August __11__, 2015
           Central Islip, New York